IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:12CR80-1 |
| | : | |
| SHAWN IRA DAY | : | |

<u>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S<br>MOTION FOR COMPASSIONATE RELEASE</u>

NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and hereby responds in opposition to the motion filed by Defendant Shawn Ira Day ("Day") requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Docket Entry ["Dkt."] #13).

The COVID-19 pandemic presents the judicial system with unprecedented issues related to the prosecution and punishment of crime, including the just treatment of prisoners facing health risks while in confinement. The government is concerned for the health and well-being of all inmates in federal custody, but is also required to uphold the law and protect the public. Congress and the executive branch, including the Federal Bureau of Prisons (BOP), have responded to the crisis posed by the COVID-19 pandemic by passing legislation and enacting guidance to address issues

related to home confinement and compassionate release for prisoners with underlying health conditions who are at greater risk for severe negative health outcomes if infected by the COVID-19 virus, in some cases expanding or building upon existing statutory frameworks.

I. **Summary**

On November 6, 2020, Day moved the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. #13). In the motion, Day states he has tested positive for COVID-19 and has multiple symptoms. (*Id.* at 5). Day alleges that due to his open dorm style housing unit, it is nearly impossible to contain the virus and that BOP cannot adequately safeguard prisoners. (*Id.*). Day also asserts that he is obese and is at high risk of having hereditary amyloidosis[1] (hATTR) due to his mother having the disease. (*Id.*). Day proposes to reside with his parents in the state of New York if he is released.

As the Centers for Disease Control and Prevention (CDC) makes clear on its "Coronavirus Disease 2019" website, older adults and people of any age with underlying medical conditions might be at increased risk for severe illness from COVID-19.[2] In its July 17, 2020 update, and as updated again on November 2, 2020, the CDC clarified that the underlying medical conditions

---

[1] *See* Dkt. #13-2 at 12–20 (describing hereditary amyloidosis (hATTR)).
[2] *People Who Are at Increased Risk for Severe Illness*, CDC.gov, (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Nov. 25, 2020).

2

believed to increase the risk of severe illness fall into two categories: those that are *known* to increase risk, and those that merely *may* increase risk of severe illness. Obesity is listed as a factor that increases the risk of severe illness, but a hereditary risk of hATTR does not appear as a risk factor.[3]

Congress requires that Day seek compassionate release by first requesting a reduction in sentence (RIS) from the BOP, through the warden of his prison, and then either waiting thirty days for the BOP to respond, or exhausting all administrative rights to appeal, whichever comes first, before moving the district court for a modification or reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Day claims that he has requested compassionate release from the warden and was denied (Dkt. #13 at 3); however, review of the documentation he submits reveals that this request was actually for home confinement. Day was denied home confinement, filed an administrative remedy request, and was denied relief. (Dkt. #13-2 at 3–5). Thus, as outlined below, Day has not demonstrated he has exhausted his administrative remedies with regard to compassionate release, and his motion should be dismissed.

---

[3] *Id.*

Case 1:12-cr-00080-WO Document 15 Filed 11/27/20 Page 3 of 13

## II. Procedural History

As reflected by the Factual Basis, Day was employed as a guidance counselor, assistant varsity football coach, and girls' soccer coach at West Montgomery High School in Troy, North Carolina. (Dkt. #2). In January of 2012, a student at the school reported to administrators that her friend and fellow student, who was at the time 14 years old, was in an inappropriate relationship with Day. The student said her friend had Day's phone number saved in her cell phone. School officials examined the phone and verified that Day's number was saved in the phone. Day was questioned and law enforcement was notified. The victim student later admitted to engaging in text correspondence with Day that was sexual in nature between November 2011 and January 2012. The texts involved Day persuading, inducing, and enticing the student to engage in sexual activity in explicit detail. Additionally, a sexual act occurred between the student and Day in Day's school office during school hours. (*Id.*).

Pursuant to a plea agreement and waiver of indictment, Day pleaded guilty to a single-count information charging him with coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Dkt. ## 1, 5, 6, Minute Entry dated 3/8/12). On June 14, 2012, the district court sentenced Day to 135 months of imprisonment, followed by seven years of supervised release. Judgment followed on July 19, 2012. (Dkt. #11). Day did

4

not appeal, nor did he file any post-trial motions before filing the instant compassionate release motion. (*See* Dkt.).

Day is currently in BOP custody at Federal Medical Center Butner, in Butner, North Carolina. He is scheduled for release on October 4, 2021. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Nov. 25, 2020).

### III. Discussion

There are two avenues by which a federal inmate in Day's position could be granted release from prison based upon his medical condition and the COVID-19 pandemic risk: (1) "home confinement" pursuant to 18 U.S.C. § 3624(c)(2), as expanded by the Attorney General's authority under the "Coronavirus Aid, Relief, and Economic Security Act" (CARES Act), and (2) "compassionate release" by means of a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based upon "extraordinary and compelling reasons." The first approach is inherently administrative in nature, dealing with statutes that govern how the BOP determines the place at which a federal prisoner actually serves his term of imprisonment. The second approach involves a judicial modification of an inmate's term of imprisonment, authorized by statute under certain circumstances and following particular administrative and judicial procedures.

5

A. Home Confinement Under the BOP Priority Program

Section 12003(b)(2) of the CARES Act authorizes home confinement during the covered emergency period. The Attorney General may invoke this authority when "emergency conditions will materially affect the functioning of the Bureau [of Prisons]"; the "Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act (H.R. 748), Pub. L. No. 116-136 (March 27, 2020).

On March 26, 2020, the Attorney General issued a memorandum to the Director of the BOP asking the BOP to prioritize the use of home confinement under then-existing law, in response to the ongoing COVID-19 pandemic and providing a non-exhaustive list of discretionary factors to be considered in that process. Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (March 26, 2020) [hereinafter the "March 26 Memo"].

On April 3, 2020, the Attorney General issued another memorandum to the Director of the BOP which referenced the earlier March 26 Memo and the steps already taken by the BOP to utilize home confinement "under the pre-CARES Act standards." Attorney General William P. Barr, Memorandum for

6

Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020) [hereinafter the "April 3 Memo"]. The Attorney General then identified three federal correctional institutions with "significant levels of infection" and directed the BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with inmates incarcerated at FCI Oakdale, FCI Danbury, and FCI Elkton, and similarly situated facilities, where you determine that COVID-19 is materially affecting operations." (*Id.*). The Attorney General explained in the April 3 Memo that he was exercising his authority under the CARES Act to "expand the cohort of inmates who can be considered for home release" and directing the BOP to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities" consistent with the guidance in the April 3 Memo and taking into consideration the factors identified in the March 26 Memo. (*Id.*). Accordingly, if the BOP determines that an inmate is suitable under the guidance for home detention, then the BOP is "directed to immediately process [the inmate] for transfer and then immediately transfer [the inmate] following a 14-day quarantine at an appropriate BOP facility[.]" (*Id.*).

As demonstrated by the documents attached to Day's motion, Day requested home confinement on June 15, 2020, and was denied on June 17, 2020. (Dkt. #13-2 at 3). Day then filed a request for administrative remedy

7

Case 1:12-cr-00080-WO   Document 15   Filed 11/27/20   Page 7 of 13

concerning this denial on July 17, 2020, reiterating his medical concerns. (*Id.* at 5). Notwithstanding Day's status as a "minimum" risk recidivism level as confirmed by his counselor (*id.*; *see also id.* at 7), the warden denied Day's administrative remedy request, stating that Day was disqualified from priority consideration for home confinement due to the nature of his offense. (*Id.* at 4). The warden further noted that Day was a "Care Level I, relatively healthy inmate with an approved RRC [residential re-entry center] placement date of 04/08/2021." (*Id.*). As the Court has recognized on numerous occasions, a decision to grant or deny a home confinement request lies exclusively within the discretion of the Attorney General. *See United States v. Baker*, 1:10-CR-00069-MR-1, 2020 WL 2430945, at *1 (W.D.N.C. May 12, 2020) (unpublished).

### B. Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)

"The court may not modify a term of imprisonment once it has been imposed except […] upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden […] whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The defendant "bears the burden of showing that he exhausted his administrative rights with the BOP before filing his compassionate-release

8

motion." *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (further citations omitted). Furthermore, before making a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a defendant "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give BOP thirty days to respond. *See* § 3582(c)(1)(A)." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). This requirement of a RIS submission to the BOP and then waiting thirty days or exhausting administrative remedies is a mandatory claim-processing rule which must be enforced when invoked; there is no exception for waiver or futility and an untimely motion should be dismissed without prejudice. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). A request to the warden for home confinement does not suffice to request compassionate release. *United States v. Desjardins-Racine*, 817 F. App'x 219, 221 (6th Cir. 2020) (unpublished); *United States v. Velazquez*, 2020 WL 3452070 (D. Ariz. June 24, 2020); *United States v. Gregory*, 2020 WL 3036001, at 1 (N.D. Ill. June 5, 2020).

Here, Day has not shown he has exhausted his administrative remedies with respect to compassionate release. In his form motion, Day checked "yes" to the question asking if he has filed a request for compassionate release, and filled in the date of the request as "7-29-20." (Dkt. #13 at 3). However, as shown in Day's own attachments, the request he filed with the warden (which the warden notes was received in his office on July 29, 2020) was in fact an

9

administrative remedy request concerning the denial of his June 2020 home confinement request. (Dkt. #13-2 at 11). The warden denied that remedy on July 31, 2020. (*Id.* at 4). Thus, Day has not exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A), and must still file a request for compassionate release pursuant to § 3582(c)(1)(A). Until Day satisfies this mandatory claim-processing rule, he is not entitled to substantive consideration of his request. *See United States v. Franco*, 2020 WL 5249369, at *1-*2 (5th Cir. Sept. 3, 2020); *United States v. Davis*, 1:17CR69, 2020 WL 3976970, at *2-3 (M.D.N.C. July 14, 2020) (denying without prejudice defendant's motion for compassionate release where defendant filed an administrative request to the warden *after* filing her motion); *United States v. Saxby*, 1:17CR396/1:11CR132, slip op. at 4-5 (M.D.N.C. Sep. 1, 2020) (denying motion without prejudice where defendant did not initiate administrative process for compassionate release).

Nevertheless, in light of Day's statement that he is COVID-19 positive, has suffered symptoms, and has a CDC-recognized risk factor, the government will address his claims briefly on the merits. Day claims he is obese, putting him at risk of severe illness from COVID-19, but provides no height or weight data or Body Mass Index ("BMI"). In an attempt to verify Day's claim, the government has reviewed Day's BOP medical records for the past year. (*See* Sealed Exhibit A (BOP Health Services Records)). There is no evidence in the

10

available records that Day is obese, nor is obesity listed on Day's "Health Problems – Current" report, where such information would normally appear. (*Id.* at 46). What does appear in the records are detailed notes regarding Day's diagnosis as COVID-19 positive on October 26, 2020, as a result of a test on October 23, 2020, his placement in isolation, and the daily health checks that were conducted. (*See id.*; *see also id.* at 2-19, 21-43). The records show that Day experienced some symptoms in the early days of his illness, (*id.* at 36–41), then beginning November 1, 2020 and each day thereafter, answered "no" to the question regarding symptoms. (*Id.* at 21–35). Day was scheduled to be released from isolation on November 16, 2020 after completing 20 days. (*Id.* at 1–2). It appears, fortunately, that Day contracted a mild case of COVID-19 and has fully recovered.

Day has not exhausted his administrative remedies. Notwithstanding this fact, it appears from the present record that Day has failed to show any "extraordinary and compelling" reason meriting compassionate release. Thus, his motion should be denied and dismissed.

11

## IV. Conclusion

For these reasons, the Court should deny Day's motion for compassionate release.

This the 27th day of November, 2020.

>Respectfully submitted,
>
>MATTHEW G.T. MARTIN
>United States Attorney
>
>
>/S/ ANGELA H. MILLER
>Assistant United States Attorney
>SCSB #11662
>United States Attorney's Office
>Middle District of North Carolina
>101 S. Edgeworth St., 4th Floor
>Greensboro, NC 27401
>336/333-5351

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Notice will be mailed to the following party:

Shawn Ira Day
Reg. No. 28286-057
FMC Butner
Federal Medical Center
P.O. Box 1600
Butner, NC  27509

/S/ ANGELA H. MILLER
Assistant United States Attorney
SCSB #11662
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
336/333-5351